```
             IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
```

BYRON BRECKENRIDGE,

              Plaintiff,

vs.                                 Case No. 10-1327-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

              Defendant.

                       MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

   The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

Plaintiff filed his application for disability on September 24, 2007, alleging that he has been disabled since January 1, 2004 (R. at 9). Plaintiff filed an earlier application for disability which was denied on August 21, 2007. Accordingly, August 22, 2007 is the beginning date of the "relevant" period for purposes of this application (R. at 9). Plaintiff is insured for disability insurance benefits through March 31, 2010 (R. at 12). At step one, the ALJ found that plaintiff has not engaged

4

in substantial gainful activity since August 22, 2007 (R. at 12). Considering plaintiff's substance use disorder, plaintiff was found to be unable to perform either past relevant work or other work that exists in significant numbers in the national economy (R. at 20).

The ALJ then made further findings assuming that plaintiff stopped substance use. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the left shoulder, and obesity (R. at 21). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 22). After determining plaintiff's RFC (R. at 23), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 24). At step five, the ALJ found that plaintiff could perform other jobs that exist in significant numbers in the national economy (R. at 25). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III. Did the ALJ err by failing to consider the opinions expressed by Dr. de Wit, a consultative psychologist?**

Dr. de Wit interviewed plaintiff on December 5, 2005 and prepared a consultative psychological evaluation report at the request of the Commissioner (R. at 261-266). The summary of his findings are as follows:

5

> This claimant shows serious difficulties in conceptualizing, attention, concentration, working memory, information, judgment, as well as depressive affect and anxiety. He will have difficulty remembering work procedures. He may not even be able to understand short and simple instructions. He can carry out simple tasks, but nothing that involves detailed instructions because of his poor memory. He has difficulty concentrating due to his mental state among other things. He cannot maintain a schedule with regular attendance. He cannot sustain an ordinary routine without supervision. He cannot make simple work related decisions. He cannot work with others without distraction from his symptoms. He can get along with coworkers on a superficial basis. He cannot interact appropriately with the general public.

(R. at 265, Exhibit 1F).

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). This rule was recently described as a "well-known and overarching requirement." Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). For these reasons, it is clear legal error to ignore a medical opinion. Victory v.

Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). Furthermore, according to SSR 96-8p:

> If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

    Plaintiff argues that the ALJ erred by failing to consider the opinions expressed by Dr. de Wit in the summary of his findings quoted above. According to defendant's brief, the ALJ reviewed, considered, and incorporated "some" facts and findings from Dr. de Wit (Doc. 14 at 19). The ALJ did reference Dr. de Wit's report (Exhibit 1F) and other exhibits in noting that plaintiff had a history of anxiety (R. at 15). The ALJ also stated that he reviewed all the exhibits (R. at 19, 23). Finally, the ALJ specifically referenced Dr. de Wit's report to discuss plaintiff's insomnia (R. at 21). There were no other references to Dr. de Wit's report in the ALJ decision. At no time did the ALJ reference any of Dr. de Wit's opinions set forth in the summary, or indicate, what weight, if any, he was according to those opinions.

    Defendant argues that Dr. de Wit's opinions were of limited relevance because they was issued for a previously adjudicated period (Doc. 14 at 19). Dr. de Wit's opinions are dated December 5, 2005 (R. at 262); because of a prior determination of nondisability, August 22, 2007 is the beginning date of the

"relevant" period (R. at 9). However, when plaintiff filed his present application, the Commissioner asked Dr. de Wit to submit his consultative examination from 2005 (R. at 261).

The case of <u>Hamlin v. Barnhart</u>, 365 F.3d 1208 (10th Cir. 2004) provides guidance to the court on this question. In <u>Hamlin</u>, the "relevant" period of the claimant's current application dated from November 6, 1990 (the day after the adjudication on the prior application). 365 F.3d at 1213. In <u>Hamlin</u>, Dr. Brixey had first stated that plaintiff was disabled in January 1985. Dr. Brixey again indicated in 1987 and 1990 that plaintiff was disabled. Finally, in 1997, Dr. Brixey completed an RFC evaluation indicating that plaintiff was disabled from 1987-1990. However, the ALJ only referenced Dr. Brixey's November 1990 opinion that the claimant had been disabled since 1985 and did not mention the other opinions by Dr. Brixey indicating that plaintiff had been disabled prior to 1990. 365 F.3d at 1216-1217. In <u>Hamlin</u>, the court held as follows:

> Finally, even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ. <u>See</u> <u>Groves v. Apfel</u>, 148 F.3d 809, 810-11 (7th Cir.1998) (evidence submitted in earlier application for benefits is relevant to subsequent disability application when determining whether claimant is disabled by a progressive condition); <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 193 (1st Cir.1987) (per curiam)

> ("[A]n ALJ is entitled to consider evidence from a prior denial for the limited purpose of reviewing the preliminary facts or cumulative medical history necessary to determine whether the claimant was disabled at the time of his second application."). Reviewing the record in light of these authorities, we conclude the ALJ failed to adequately consider the opinions of Drs. Brixey and Underhill.

365 F.3d at 1215-1216.  Later on, the court in Hamlin reviewed other medical evidence from the earlier adjudicated period and held that these reports should also have been considered by the ALJ.  365 F.3d at 1222-1223 n.15.

In the case of McLeroy v. Barnhart, Case No. 03-1356-MLB (D. Kan. June 17, 2004), due to a prior adjudication, January 20, 2001 was the earliest date on which the issue of disability could be considered.  McLeroy, Doc. 15 at 5.  The record contained medical opinions from February 23, 1999 and May 10, 1999 that plaintiff could not work full-time.  Neither of these opinions were discussed by the ALJ.  Relying on Hamlin, the court held that the failure to consider the medical opinions from 1999 was clear error and remanded the case in order for the 1999 medical opinions to be considered.  McLeroy, Doc. 15 at 6-8.

In the case before the court, Dr. de Wit prepared a consultative examination at the request of the Commissioner over 1 ½ years prior to the "relevant" period of the present application for disability.  When the present application was filed, the Commissioner asked Dr. de Wit to provide a copy of his

9

earlier evaluation in order to add it to the record in this case. However, the ALJ ignored the opinions of Dr. de Wit indicating very serious mental impairments which could seriously interfere with his ability to work.  Furthermore, Dr. de Wit's report indicated no substance abuse history at the time it was written in 2005 (R. at 264).[1]  Therefore, it is potentially relevant to the question of whether plaintiff could work if he was not abusing substances.

    The ALJ relied on opinions by Dr. Adams, a nonexamining agency consultant, and Dr. Nystrom, who performed a consultative mental status examination, in finding that plaintiff was not disabled absent substance abuse (R. at 17, 19, 24).  Dr. Adams indicated in her report dated July 15, 2008 that plaintiff's drug addiction was in full remission (R. at 457, 465; Doc. 14 at 20). Dr. Nystrom's report, dated June 23, 2008, indicates limited alcohol intake (one beer a month) and drug use years ago (R. at 440).  Dr. Adams found that plaintiff only had moderate limitations in the ability to understand, remember and carry out detailed instructions, in the ability to maintain attention and

---

[1] As noted by defendant in their brief (Doc. 14 at 3, 11), a psychosocial history prepared by Mr. Oliphant, LMSW, on June 19, 2007, stated that "For the most part, it looks like the patient only started using cocaine recently" (R. at 335, 337).  A February 27, 2009 medical report indicates that plaintiff stated that he was addicted to cocaine for about 1 ½ years, and has been clean for six months; this would indicate that plaintiff was abusing cocaine during 2007-2008 (R. at 565).

10

concentration for extended periods, and in the ability to interact appropriately with the general public (R. at 471-472). Dr. Nystrom found no psychological disorder that would prevent plaintiff from understanding and remembering simple instructions, maintaining concentration and persistence, keeping pace at work, and being able to maintain appropriate social interactions with coworkers, supervisors, and the public (R. at 442).

None of the three reports from medical sources regarding plaintiff's mental status indicate that their findings were made while plaintiff was abusing alcohol or drugs; in fact all three appear to indicate that plaintiff was not abusing alcohol or drugs when these evaluations were prepared. However, the December 2005 report from Dr. de Wit contains findings that are markedly different from the June 2008 report from Dr. Nystrom and the July 2008 report from Dr. Adams. Unlike the latter two reports, the report from Dr. de Wit raises serious questions about plaintiff's ability to work.

The "relevant date" of plaintiff's present application for disability is August 22, 2007. However, as noted in Hamlin, a medical source's observations regarding a claimant's allegations of disability from earlier, previously adjudicated periods are nevertheless relevant and should be considered when determining whether the claimant was disabled at the time of the subsequent application. The Commissioner specifically requested the

evaluation from Dr. de Wit when this subsequent application for disability was filed and added it to the record; however, the ALJ never mentioned any of Dr. de Wit's opinions set forth in his summary.

The court will therefore consider whether the ALJ's failure to consider the opinions of Dr. de Wit was harmless error. Courts should apply the harmless error analysis cautiously in the administrative review setting. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). However, it may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance where, based on material the ALJ did at least consider (just not properly), the court could confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way. Fischer-Ross, 431 F.3d at 733-734; Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). Although a reasonable factfinder might give greater weight to the more recent opinions of Dr. Adams and Dr. Nystrom, especially given the fact that their opinions were made during the "relevant" period, the court cannot say that no reasonable factfinder would make different findings, either that plaintiff was disabled, or that he had greater mental limitations, after

considering the opinions of Dr. de Wit.[2]  Therefore, as in Hamlin, the court finds that the ALJ failed to consider the opinions of Dr. de Wit, and the case shall be remanded in order for the Commissioner to consider the opinions of Dr. de Wit, and make findings regarding what weight, if any, his opinions should be accorded in light of all the evidence in the case.

The Commissioner also argued that the opinions of Dr. de Wit should be discounted because Dr. de Wit relied exclusively on the subjective complaints of the plaintiff (Doc. 14 at 19).  First, Dr. de Wit does not indicate in his evaluation that he relied exclusively on plaintiff's subjective complaints in making his findings.  Furthermore, Dr. de Wit performed some testing on the plaintiff in order to ascertain his mental status (R. at 264-265).  Second, this rationale for discounting the opinion of Dr. de Wit was not made by the ALJ, who never even mentioned the opinions of Dr. de Wit.  An ALJ's decision should be evaluated

---

[2]For example, Dr. Adams found that plaintiff had moderate limitations in the ability to understand, remember and carry out detailed instructions, in the ability to maintain attention and concentration for extended periods, and in the ability to interact appropriately with the general public (R. at 471-472). However, the ALJ's RFC findings included only one mental limitation: that he not perform work requiring him to interact significantly with the general public (R. at 23).  A reasonable factfinder, after considering the opinions of Dr. de Wit and Dr. Adams, might find that plaintiff has additional mental limitations that should be included in plaintiff's RFC.  The court cannot speculate regarding the impact of additional mental limitations on whether or not plaintiff can perform other work in the national economy.

13

based solely on the reasons stated in the decision.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action.  Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

**IV.  Did the ALJ err in his analysis of the impact of plaintiff's alcohol and drug use**?

Plaintiff argues that the evidence does not support the ALJ's consideration of the impact, if any, of plaintiff's substance abuse on his ability to work.  The court will not address the issue of whether plaintiff would be disabled if abusing substances, or whether he would still be disabled absent substance abuse, because they may be affected by the ALJ's resolution of the case on remand after giving further consideration to all the medical opinion evidence, including the opinions expressed by Dr. de Wit, Dr. Adams, and Dr. Nystrom.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

As noted above, none of the opinions from these three medical sources indicate that plaintiff was abusing substances when these evaluations or assessments were provided.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 30th day of August 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge